## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 44704

| | |
|---|---|
| In the Matter of the DOE CHILDREN, Children Under Eighteen (18) Years of Age. | ) ) |
| ------------------------------------------------------- | ) Boise, April 2017 Term |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE, | ) ) 2017 Opinion No. 58 |
| | ) |
| Petitioner-Respondent, | ) Filed: June 2, 2017 |
| | ) |
| v. | ) Stephen W. Kenyon, Clerk |
| | ) |
| JANE DOE (2016-47), | ) |
| | ) |
| Respondent-Appellant. | ) |

_____

Appeal from the District Court of the First Judicial District of the State of Idaho, Kootenai County. Hon. Clark A. Peterson, Magistrate Judge.

The termination of Doe's parental rights is <u>affirmed</u>.

Douglas A. Pierce, Coeur d'Alene, attorney for appellant.

Hon. Lawrence G. Wasden, Idaho Attorney General, attorney for respondent.

_____

JONES, Justice

### I. NATURE OF THE CASE

Jane Doe ("Doe") appeals from the magistrate court's judgment granting the Idaho Department of Health and Welfare's ("IDHW") petition to terminate her parental rights. Doe asserts that the magistrate court erred by: (1) terminating her parental rights notwithstanding its finding that her mental health issues made it impossible for her to comply with the case plan; and (2) considering evidence outside of the record during the termination trial.

### II. FACTUAL AND PROCEDURAL BACKGROUND

Doe has three children, Z.C. (born 2007); J.C. (born 2008), and D.C. (born 2012) (collectively, the "Children"). On May 31, 2013, Doe voluntarily placed Z.C. and D.C. at a

1

group foster home in Coeur d'Alene called the Children's Village. On July 17, 2013, Doe placed J.C. at the Children's Village as well.

On January 27, 2014, a petition under the Child Protective Act was filed alleging that the Children came within the purview of the act based on neglect, abandonment, homelessness, and/or an unstable home environment. In an accompanying affidavit, IDHW social worker, Heather Johnson ("Ms. Johnson"), testified that the Children had resided at the Children's Village since their respective drop off dates in 2013. Further, Ms. Johnson related that from November 2013 through January 2014, IDHW had received several referrals from the Children's Village, including the following: (1) on November 25, 2013, it was reported that Doe had disclosed that Z.C. and J.C. were sexually abused by their father years ago (Doe later claimed this was only a misunderstanding) and that Doe was homeless at that time; (2) on January 8, 2014, it was reported that, on a weekend visit with Doe, the Children had stayed in a house with many other people, including six other children, a heater had fallen on top of D.C., Doe had failed to give D.C. his medication for an infection, D.C. returned to Children's Village with a double ear infection and cigarette butts in his toys, and concerns were raised that Doe's appearance and behavior indicated that she was under the influence of a substance; and (3) on January 17, 2014, it was reported that Doe took D.C. to the doctor for a face rash, which was a staph infection, and failed to pick up the prescription when called. Ms. Johnson's affidavit also reviewed the various child protection referrals regarding Doe and the Children, which included concerns regarding Doe's residence not having heat; Doe not being able to afford a phone, a vehicle, or food; the presence of cigarettes, and marijuana at Doe's residence; Doe left drug paraphernalia at a shelter home; Doe and the Children were homeless; Doe wanted to give up the Children because she was depressed; and a burn mark was found on Z.C.'s neck with no explanation provided by Doe.

On January 27, 2014, IDHW moved for the removal of the Children alleging that it was contrary to the welfare of the Children to remain in the home and in the Children's best interests to vest legal custody with IDHW pending further proceedings. The magistrate court granted the motion that same day ordering that the Children be placed in the temporary custody of IDHW pending a shelter care hearing. On February 4, 2014, after a shelter care hearing, the magistrate court found it appropriate to shelter the Children based on neglect and an unstable home

2

environment. Further, the magistrate court found that IDHW had made reasonable efforts prior to the placement of the Children in shelter care to prevent the need for such placement.

On February 28, 2014, the magistrate court held an adjudicatory hearing and issued findings of fact, conclusions of law, and an order for legal custody. Therein, the magistrate court found that the Children had been subjected to an unstable home environment and that continuation of residence in the home would be contrary to their welfare. Prior to the adjudicatory hearing, Ms. Johnson submitted an adjudicatory report of investigation, which found as follows, in pertinent part: Doe had refused to engage in services to ensure the safety of the Children; IDHW had offered assistance to Doe to address the housing, substance abuse, mental health, and parenting concerns; Doe appeared to be under the influence of a substance during a recent visit with the Children; Doe refused to submit to a drug test; IDHW requested a mental health assessment to assess any mental health issues that may impact Doe's daily functioning, relationships, and/or ability to work or engage in meaningful activities; and an ongoing concern existed that Doe was actively using drugs.

Ultimately, the magistrate court concluded that the Children's continuation of residence in Doe's home would be contrary to their welfare; vesting legal custody with IDHW would be in the best interests of the Children; and reasonable efforts were made by IDHW to eliminate the need for foster care, but were not successful. Accordingly, the magistrate court ordered that the Children be placed in the legal custody of IDHW; a case plan be submitted within 30 days; and reasonable efforts continue to be made to reunify the family in a timely manner in accordance with the case plan or, alternatively, the initiation of the finalization of the permanent placement of the Children. *Id.* During the hearing, the magistrate court noted Doe's history of drug use, mental health issues, homelessness, and her refusal to submit to drug tests or receive assistance or services from IDHW.

On March 19, 2014, IDHW submitted a proposed case plan, which identified the following six areas of concern: (1) Doe's ability to protect the Children from further abuse, considering the fact that IDHW had received referrals regarding Doe's physical abuse, sexual abuse, neglect, homelessness, and failure to seek medical attention for D.C; (2) Doe's homelessness; (3) Doe's employment; (4) the concern that Doe had been suspected of arriving to visitations under the influence of drugs and/or alcohol and had refused to drug test or engage in substance abuse services; (5) Doe's mental health issues and her refusal to provide information

3

of her mental health, or engage in services with IDHW; and (6) the need for a concurrent case plan in the event that reunification was unsuccessful. For each area of concern, the case plan listed a desired result and required tasks.

On March 25, 2014, the magistrate court held a case plan hearing. The hearing log notes indicate that Doe objected to several requirements of the case plan; namely, the drug testing and the mental health assessments. The magistrate court approved the drug testing requirement because Doe had tested positive for marijuana at the time of J.C.'s birth and previously disclosed her recreational use of marijuana. The magistrate court modified the case plan's requirement for mental health assessments and required Doe to provide releases of mental health records from prior assessments instead of submitting to new assessments. The magistrate court noted that IDHW would be permitted to request further mental health assessments if it was not satisfied with Doe's release of prior assessments. Lastly, the magistrate court warned Doe that failure to comply with the case plan could result in termination of her parental rights. Following the hearing, a revised case plan was issued in accordance with the magistrate court's modifications. On April 3, 2014, the magistrate court issued an order corresponding with its findings and conclusions at the hearing.

Four review hearings were held between June 17, 2014 and November 25, 2014. Prior to the first review hearing, the Guardian ad litem and IDHW submitted progress reports. The Guardian ad litem concluded that Doe was making only minimal progress on her case plan and was unable to appear for a drug and alcohol evaluation because she was in jail on the evaluation date. The Guardian ad litem recommended that the Children remain in the legal custody of IDHW. IDHW's progress report expressed concern regarding Doe's erratic behavior, high anxiety, and drug use. Further, IDHW noted that Doe refused to submit to drug tests and blamed IDHW for her noncompliance. IDHW reported that the Children's Village employees claimed that Doe scared them, was disrespectful, and lied. Children's Village asked that the Children be removed because they felt that they could not protect other children from Doe's poor behavior. IDHW reported that Doe had yet to prove her employment by providing pay stubs. Doe was also convicted for possession of drug paraphernalia with intent to use.

On June 17, 2014, at the first review hearing, IDHW asserted that the mental evaluation that Doe released was incomplete; accordingly, IDHW requested that the case plan be amended to require an entire mental evaluation. Doe objected to IDHW's request and argued that she was

4

apprehensive of IDHW's efforts for reunification because IDHW was not communicating with her, nor was it completing its required tasks. Doe also blamed the specific case worker for failing to communicate with her and for physically and emotionally abusing her. Doe admitted that she had recently spent six days in jail, but argued that her jail time was irrelevant. The magistrate court reviewed each case plan item and concluded as follows: (1) Doe had failed to provide proof of employment; (2) Doe had refused to submit to random drug testing; (3) Doe must submit to a full mental evaluation; and (4) IDHW had made reasonable efforts to accomplish reunification.

On September 2, 2014, the magistrate court held a second review hearing. The Guardian ad litem and the IDHW case worker again submitted progress reports. The Guardian ad litem's report provided that Doe's behaviors had "progressively gotten worse since the last hearing." IDHW's report provided that Doe had failed to make progress on her case plan. IDHW's report and the hearing log notes indicate that Doe had continued to refuse to submit to a drug test; however, at the hearing, Doe agreed to submit to a drug test on the spot. She tested positive for THC. Out of a concern for Doe's mental health condition, the magistrate court scheduled a review hearing for three days later to facilitate the signing of releases and to further encourage Doe to make progress on her case plan.

On October 14, 2014, a third review hearing was held. The Guardian ad litem reported that the Children were improving dramatically while living with the foster parent and attributed the improvement to the consistency and positive training that the Children were receiving. Further, the Guardian ad litem reported that Doe was "not addressing the most important aspects of her case plan, drug testing and a mental health assessment." Ultimately, the Guardian ad litem recommended that the magistrate court "move forward with the termination of parental rights so that permanency may be pursued." IDHW's report provided that Doe had made progress with housing because she was living with her husband in Rathrdrum, Idaho, and that the home was physically appropriate; however, Doe had failed to make progress with regard to her employment, her visitation behavior, substance abuse, parenting classes, or mental health evaluations. The hearing log notes indicate that Doe had continued to refuse drug testing and, although she had made progress by meeting with a mental health evaluator, she had yet to complete a full mental health evaluation.

On November 25, 2014, a fourth reviewing hearing was held. The Guardian ad litem and IDHW case worker noted that the Children were progressing, but that Doe's noncompliance had

5

continued. Accordingly, it was again recommended that the magistrate court move forward with the termination of Doe's parental rights. A letter from a mental health evaluator was attached to IDHW's report. The evaluator concluded that clear symptomology was present, but it was not possible to render an opinion on a diagnosis of mental illness because of the inability to rule out substance abuse as a primary cause of said symptomology.

Five permanency hearings were held between January 6, 2015 and December 15, 2015. Prior to the first permanency hearing, the Guardian ad litem again reported that while the Children were progressing, Doe was failing to comply with her case plan. Accordingly, it again recommended that the magistrate court move forward with the termination of Doe's parental rights. IDHW's report was substantially similar to its previous report; that is, Doe had continued her noncompliance with the case plan. On January 12, 2015, the magistrate court issued an order regarding the permanency hearing in which it found that IDHW had made reasonable efforts to prevent or eliminate the need for placement of the Children in foster care. Further, the magistrate court approved the permanency plan of termination with the continuation of reunification efforts. IDHW filed its petition to terminate Doe's parental rights on January 16, 2015.

On March 31, 2015, a second permanency hearing was held. The Guardian ad litem again recommended that the magistrate court move forward with the termination of Doe's parental rights due to continued noncompliance with the case plan. IDHW reported that the Children's behavior was being negatively affected by Doe's visits. Accordingly, IDHW asked the magistrate court to reconsider its approval of visitation. The magistrate court concluded that reunification should not be suspended yet, and emphasized the need for Doe to submit to the necessary services and treatment.

On June 23, 2015, a third permanency hearing was held. Prior to the hearing, IDHW submitted a review, which concluded as follows, in pertinent part:

> For the duration of this case [Doe] has been resistant to all services outlined on her case plan. [Doe] has not adequately addressed her mental health issues and is unwilling to attend counseling services to do so.

The magistrate court found that Doe had still not addressed her mental health issues. Further, the magistrate court found that IDHW had gone above and beyond in attempting to reunify the family. Accordingly, the magistrate court authorized IDHW's request to discontinue reunification efforts. A corresponding order was issued on June 25, 2015. Therein, the magistrate

6

court ordered an amendment to the permanency plan to include termination without reunification.

On September 15, 2015, a fourth permanency hearing was held. Prior thereto, IDHW provided a review, wherein it explained that it was unable to report on Doe's progress because Doe had cut off all contact with IDHW.

On December 15, 2015, a fifth permanency hearing was held. IDHW submitted a progress report, which explained that Doe had attended two visitations, but one ended in her breaking down and being very upset. Further, IDHW provided that it was unable to assess other areas of Doe's progress because of her noncompliance.

The magistrate court held review hearings on May 10 and 16, 2016. Doe requested a second chance at working her case plan, but her request was denied. The magistrate court discussed possible dates for a termination trial and explained to Doe that if the State failed to prove that termination was appropriate, reunification would be ordered immediately.

The trial for the termination of Doe's parental rights was held August 10–12, and 30, 2016. The magistrate court issued its findings of fact, conclusions of law and order terminating Doe's parental rights, and a corresponding judgment on December 16, 2016. In its findings of fact, conclusions of law, and order, the magistrate court found that IDHW proved, to a clear and convincing standard, the following three grounds for the termination of Doe's parental rights: (1) neglecting the Children as defined by Idaho Code section 16-1602(31); (2) neglecting the Children by failing to comply with the court's order in the child protection act case or the case plan, and reunification has not occurred within the time standards set forth in Idaho Code section 16-1629(9); and (3) an inability to discharge parental responsibilities and such inability will continue for a prolonged, indeterminate period and will be injurious to the health, morals or well-being of the Children. The magistrate court also found that IDHW proved that the termination was in the best interest of the Children.

The magistrate court found that the following factors weighed in favor of its finding that the termination was in the best interests of the Children: lack of stability and permanency of the home; resistance by those who live in the home to permit IDHW to inspect the home; lack of stable employment; Doe's lack of effort to improve her situation; Doe's failure to complete evaluation and treatment for mental health issues; Doe's resistance to drug testing; Doe's periodic incarceration; Doe's continued failed drug tests; the stability of the Children in their

7

current placement and their improvement while away from Doe; the testimony regarding the specific needs of the Children, which Doe does not have the ability to meet; and the bonding that has occurred in the Children's present placement. Further, the magistrate court found that the Children had been in IDHW's custody for over fifteen of the most recent twenty-two months, and that during the most recent twenty-two months, reunification had not been accomplished.

The magistrate court acknowledged that Doe's mental health issues impacted her ability to complete her case plan and provide a stable home, but ultimately concluded that Doe's noncompliance with the case plan was willful and that her failure to comply with the case plan was not a result of her mental health issues. Alternatively, the magistrate court found that even if Doe's mental health issues were considered to prevent compliance with the case plan, termination was still proper because Doe's unresolved mental health issues rendered her unable to discharge her parental responsibilities and such inability would continue for a prolonged, indeterminate period and would be injurious to the health, morals, or well-being of the Children. The magistrate court found Doe's argument—that she could comply if given one more chance—unpersuasive because it was belied by the overwhelming record of noncompliance. Ultimately, the magistrate court found that because "at least one statutory ground has been pled and proved to a clear and convincing evidence standard, and because termination has been shown to be . . . in the best interests of the [C]hildren to a clear and convincing evidence standard, the court may grant [IDHW's] petition."

Doe appeals.

### III. ISSUES ON APPEAL

1. Whether the magistrate court erred in terminating the parental rights of Doe, notwithstanding its finding that Doe's mental health issues impacted her ability to comply with the case plan.

2. Whether Doe's due process rights were violated because the same magistrate court judge presided over both the child protection action and the termination trial.

### IV. STANDARD OF REVIEW

An appeal of the termination of parental rights is reviewed as follows:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the

magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive[,] and to judge the character of the parties.

*Idaho Dep't of Health & Welfare v. Doe (2016-11)*, 160 Idaho 824, 831, 379 P.3d 1094, 1101 (2016) (quoting *Idaho Dep't of Health & Welfare v. Doe (2015-01)*, 158 Idaho 764, 767, 351 P.3d 1222, 1225 (2015)).

## V. ANALYSIS

### A. The magistrate court did not err in terminating Doe's parental rights, notwithstanding its finding that Doe's mental health issues impacted her ability to comply with the case plan.

Doe argues that the magistrate court erred when it terminated her parental rights, notwithstanding its finding that it was impossible for Doe to comply with her case plan. Doe's argument can be distilled to the following three points. First, Doe asserts that she constructively asserted an impossibility defense by demonstrating that her mental health issues made it impossible for her to comply with her case plan. Doe notes that the magistrate court recognized that her mental health issues impacted her ability to complete her case plan. Doe cites this Court's recent opinion in *Idaho Department of Health & Welfare v. Doe (2016-14)* for the proposition that "impossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan." 161 Idaho 596, ___389 P.3d 141, 145 (2016).

Second, Doe asserts that IDHW failed to demonstrate that she was unable to discharge her parental responsibilities. Doe asserts that she "participated greatly" in her case plan, notwithstanding the fact that her mental health issues clearly impacted her ability to do so. She argues that she has shown the ability to "maintain stable housing, maintain sobriety for substantial periods of time, and intermittent employment." Accordingly, Doe argues that, if given more time, she could maintain the stability needed to "not only have a relationship with her children, but perhaps take the children back in her care."

9

Third, Doe submits that the termination of her parental rights was not in the best interest of the Children. Doe claims that evidence presented at trial established that the termination of her parental rights would be devastating to the Children.

In response to Doe's first point, IDHW claims that Doe has misstated the magistrate court's findings and conclusions. IDHW quotes the magistrate court as follows: "Though her mental health issues clearly impact her ability to complete her case plan . . . they do not prevent her from doing so. It was possible for [Doe] to comply with her case plan." Further, IDHW asserts that Doe's argument is directly contradicted by her testimony, which follows, in pertinent part:

> Q: [D]id you ever tell [IDHW] about any personal barriers that you might have, personal things that keep you from being able to do what this case plan said?
> A: Nope.
> Q: You didn't ever tell them? Okay.
> A: There's nothing that keeps me from doing what this case plan, um, says other than the case workers and refusing to keep contact or providing documentations, providing scheduled appointments, making arrangement.

IDHW submits that there is substantial and competent evidence supporting the magistrate court's findings that Doe failed to comply with her case plan and that such failure was due to her own choices, not her mental health issues.

In response to Doe's second point, IDHW emphasizes that Doe's claim that she has the ability to maintain stable housing, sobriety and employment is not the issue; rather, the issue is whether Doe has in fact maintained stable housing, sobriety, and employment as required by the case plan. IDHW claims that there is substantial and competent evidence supporting the magistrate court's finding that Doe is unable to discharge her parental responsibilities and that such inability will continue for a prolonged, indeterminate period and will be injurious to the health, morals, or well-being of the Children.

Regarding Doe's third point, IDHW emphasizes the need for permanency and stability for the Children and argues that Doe has failed to so provide. IDHW claims that this Court should not consider Doe's argument because she fails to cite authority in support thereof.

Idaho Code section 16-2005(1) provides that a court may terminate the parental rights of a parent if it is found that such termination is in the best interests of the child and that one or more of the following conditions exists:

(b) The parent has neglected or abused the child.

10

. . .

(d) The parent is unable to discharge parental responsibilities and such inability will continue for a prolonged indeterminate period and will be injurious to the health, morals or well-being of the child.

I.C. § 16-2005(1). Idaho Code section 16-2002(3) defines "neglected" as follows:

(a) Conduct as defined in section 16-1602(31[0]), Idaho Code; or

(b) The parent(s) has failed to comply with the court's orders or the case plan in a child protective act case and:

(i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and

(ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

I.C. § 2002(3). Further, Idaho Code section 16-1602(31) defines "neglected" as a child:

(a) Who is without proper parental care and control, or subsistence, medical or other care or control necessary for his well-being because of the conduct or omission of his parents, guardian or other custodian or their neglect or refusal to provide them . . . or

(b) Whose parents, guardian or other custodian are unable to discharge their responsibilities to and for the child and, as a result of such inability, the child lacks the parental care necessary for his health, safety or well-being . . . .

I.C. § 16-1602(31).

"Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. When considering the best interests of the child, a trial court may consider numerous factors." *In re Doe (2015-03)*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015) (quoting *In re Doe (2014-15)*, 157 Idaho 765, 772, 339 P.3d 1169, 1176 (2014)); I.C. § 16-2005(1). While a comprehensive list of factors a court must consider does not exist, this Court has considered the following: "the stability and permanency of the home, unemployment of the parent, . . . improvement of child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law." *In re Doe (2014-15)*, 157 Idaho at 772, 339 P.3d at 1176 (quoting *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014)). Additionally, this Court has considered the testimony from IDHW social workers, and guardians ad litem. *Doe*, 145 Idaho at 665, 182 P.3d at 1199.

*Idaho Dep't of Health & Welfare v. Doe (2016–11)*, 160 Idaho 824, 833–34, 379 P.3d 1094, 1103–04 (2016).

11

Doe is correct in claiming that impossibility may be asserted as a defense to a claim of neglect. In *Idaho Department of Health & Welfare v. Doe (2016-14)*, this Court considered an appeal from a magistrate court's termination of a mother's parental rights. 161 Idaho 596, ___, 389 P.3d 141, 143 (2016). The basis for the termination of the mother's parental rights was neglect founded upon failure to comply with the court's orders or the case plan. *Id.* On appeal, the mother argued that compliance with her case plan was impossible due to her incarceration. *Id.* at ___, 389 P.3d at 144. In response, IDHW argued that the mother was responsible for her noncompliance because she could have complied had she not been incarcerated. *Id.* This Court conceded that the language of Idaho Code section 16-2002(3)(b) did not leave room for an impossibility defense because it merely required a finding that the parent failed to comply with court orders or the case plan, and that IDHW had custody of the child for a specified duration. *Id.* at ___, 389 P.3d at 145. Nonetheless, this Court held that "impossibility may be asserted as a defense to a claim of neglect founded upon failure to comply with the requirements of a case plan." *Id.* This Court explained that there was "no principled basis for [termination of parental rights] for circumstances beyond [a parent's] control." *Id.* However, this Court cautioned that its holding did not require a finding of "willful non-compliance with the terms of a case plan as a prerequisite to a finding of neglect under Idaho Code section 16-2002(3)(b)." *Id.* Instead, this Court provided that a "trial court must find that the parent is responsible, whether directly or indirectly, for non-compliance with the requirements of a case plan." *Id.* This Court distinguished the impossibility of case plan compliance from instances where a parent bore responsibility for the noncompliance. *Id.* This Court explained that in *Idaho Department of Health & Welfare v. Doe (2014–17)*, 157 Idaho 694, 701, 339 P.3d 755, 762 (2014), the mother's failure to comply with her case plan consisted of missed visitations, failure to provide the required releases, failure to submit to drug testing, continued use of methamphetamine, and failure to submit to counseling. *Id.* Such non-compliance, this Court reasoned, was not a product of impossibility resulting from a disability; rather it reflected her decision to continue drug use with the consequence of case plan non-compliance. *Id.*

Doe's first assertion is meritless not only because it is based on a misstatement, but also because she misunderstands the impossibility defense. Doe asserts that the magistrate court found that it was impossible for Doe to comply with her case plan because of her mental health issues. The magistrate court made no such finding. While the magistrate court found that Doe's

12

mental health issues impacted her ability to comply with the case plan, it concluded that Doe's non-compliance was willful. The magistrate court did not mince words; it emphasized that "Doe is responsible, both directly and indirectly, for non-compliance with the requirements of the case plan. Her failures to comply . . . were not the result of accident or disability." Doe's claim that the magistrate court found it impossible for her to comply with her case plan is clearly false.

The magistrate court's findings undercut Doe's impossibility defense. In *Idaho Department of Health & Welfare v. Doe (2016-14)*, this Court provided that impossibility was a defense to termination based on neglect for failure to comply with a case plan when the circumstances were beyond the parent's control. *Id.* at ___, 389 P.3d at 145. However, this Court plainly stated that impossibility was not a defense in instances where the parent was responsible, whether directly or indirectly, for case plan non-compliance. *Id.* Here, the magistrate court found that Doe's non-compliance was willful. Accordingly, Doe's impossibility defense is unavailing.

Doe's second assertion is also meritless. Doe claims that IDHW failed to demonstrate that she was unable to discharge her parental responsibilities because she "participated greatly" in her case plan. In its findings of fact, conclusions of law, and order, the magistrate court found that the record, testimony, and exhibits supported termination because Doe's unresolved mental health issues rendered her unable to discharge her parental responsibilities and that such inability would continue for a prolonged, indeterminate period and would be injurious to the health, morals or well-being of the Children. Substantial, competent evidence supports the magistrate court's findings. The record, trial testimony, and trial exhibits demonstrate that, although Doe made occasional slight improvements, overall she demonstrated an inability to discharge parental responsibilities by failing to make progress with her visitation behavior, employment status, substance abuse, or mental health evaluations. Accordingly, Doe's argument fails.

Doe's third assertion is unpersuasive. Doe claims that it is not in the best interests of the Children to terminate her parental rights because severing the parent-child relationship would be devastating to the Children. A court may consider many factors when analyzing the best interests of children, including: the stability and permanency of the home, unemployment of the parent, improvement of the children while in foster care, the parent's efforts to improve her situation, and testimony from IDHW social workers and guardians ad litem. *Idaho Dep't of Health & Welfare v. Doe (2016-11)*, 160 Idaho 824, 833–34, 379 P.3d 1094, 1103–04 (2016). Here, the magistrate court listed the following factors in support of its conclusion that termination was in

the best interests of the Children: Doe's lack of stable employment, lack of efforts to improve her situation, failures regarding evaluation and treatment of mental health issues, resistance to drug testing, periodic incarceration, continued failed drug tests, and the stability of the Children in their current placement. Doe's subjective claim that the Children would be devastated does not undermine the substantial, competent evidence found by the magistrate court that termination would be in the best interests of the Children. Further, Doe fails to cite authority supporting her claim that the Children's devastation should outweigh facts that suggest that termination of the parent-child relationship is in the Children's best interest. Accordingly, we affirm the magistrate court's judgment.

**B.    Doe's due process rights were not prejudiced as a result of the same magistrate judge presiding over the child protection action and the termination trial.**

Doe argues that the magistrate court erred by considering matters outside of the record when it granted IDHW's petition to terminate Doe's parental rights. Doe notes that the same magistrate judge presided over both the preceding two years of review hearings and the termination trial and argues that the magistrate judge's experience with Doe through two years of review hearings, which was not introduced at trial, prejudiced Doe's due process rights.

IDHW argues that there is no evidence that the magistrate judge's experience with Doe during the review hearings prejudiced a substantial right of Doe. Nonetheless, IDHW asserts that certified copies of the magistrate court's orders in the underlying child protection action were properly admitted as exhibits to the termination trial. Accordingly, IDHW asserts that the magistrate judge's consideration of the underlying child protection case was not error.

> Even in an appeal from the termination of parental rights, "we will not consider an issue which is not supported by cogent argument and authority." *Idaho Dep't of Health & Welfare v. Doe*, 151 Idaho 498, 503 n. 1, 260 P.3d 1169, 1174 n. 1 (2011) (citing *Liponis v. Bach*, 149 Idaho 372, 374, 234 P.3d 696, 698 (2010); I.A.R. 35(a)(6)).

*Idaho Dep't of Health & Welfare v. Doe (2013–15)*, 156 Idaho 103, 109, 320 P.3d 1262, 1268 (2014).

Doe's argument is meritless because it fails to elaborate on the vague claim that the magistrate judge's previous experience with Doe in the child protection case resulted in a due process violation. However, even if Doe were to present a relevant legal argument supporting her contention, such an argument would fail because IDHW's reports and the magistrate court's

14

orders were properly admitted as exhibits to the termination trial. Therefore, the magistrate judge's reference to the underlying child protection case was not, as Doe claims, outside the record, nor did it prejudice Doe's substantial rights.

## VI. CONCLUSION

We affirm the termination of Doe's parental rights.

Chief Justice BURDICK, Justices EISMANN, HORTON and BRODY CONCUR.