# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 47634

| | | |
|---|---|---|
| In the Matter of: John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age. | ) ) ) | |
| STATE OF IDAHO, DEPARTMENT OF HEALTH AND WELFARE, | ) ) | Filed: March 16, 2020 |
| Petitioner-Respondent, | ) ) ) | Karel A. Lehrman, Clerk |
| v. | ) ) ) | THIS IS AN UNPUBLISHED OPINION AND SHALL NOT |
| JANE DOE (2019-45), | ) ) | BE CITED AS AUTHORITY |
| Respondent-Appellant. | ) ) ) | |

Appeal from the District Court of the Third Judicial District, State of Idaho, Canyon County. Hon. Courtnie Tucker, District Judge.

Judgment terminating parental rights, <u>affirmed</u>.

Ali Perkins Law; Alexa J. Perkins, Meridian, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Kathryn T. Garrett, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Chief Judge

Jane Doe appeals from the magistrate court's judgment terminating her parental rights, arguing the court erred in finding that she neglected the children and it is in the children's best interests to terminate her parental rights. Doe argues that if there was neglect, it was only because it was impossible for her to comply with the case plan. Doe also argues her due process rights were violated because the Idaho Department of Health and Welfare (Department) did not make reasonable efforts to reunify the children with Doe. The record contains substantial and competent evidence to support the magistrate court's finding that Doe neglected her children and that terminating Doe's parental rights is in the best interests of the children. Additionally, it was not impossible for Doe to comply with the case plan and Doe's due process rights were not violated. The magistrate court's judgment terminating Doe's parental rights is affirmed.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the biological mother of three minor children, Child 1, who is not the subject of this underlying Child Protective Act (CPA) case, B.P., and D.P. In a previous, unrelated Montana case, B.P. and D.P. had been removed from Doe's care, with custody granted to Father. Father brought B.P. and D.P. back to Idaho and Doe soon rejoined them. In November 2016, D.P. was declared in imminent danger. At the subsequent shelter care hearing, B.P. was added to the CPA case. On December 1, 2016, at the adjudicatory hearing, the magistrate court vested legal custody of D.P. and B.P. with the Department. That same month, the magistrate court approved a case plan for Doe. On January 18, 2018, after the children had been in custody for fifteen months, the Department petitioned to terminate Doe's parental rights. In June 2018, the magistrate court relieved the Department of making any further reasonable efforts for reunification based on Doe's lack of progress.

The hearing to terminate Doe's parental rights was scheduled intermittently between October 2018 and July 2019; the hearing lasted approximately eight days. At the end of the hearing, the magistrate court found by clear and convincing evidence that Doe had neglected her children, had not accomplished reunification within fifteen of the most recent twenty-two months, and that termination of Doe's parental rights was in the best interests of the children. Doe timely appeals.

# II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *Doe v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably

certain. *In re Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

### III.

### ANALYSIS

Doe argues the magistrate court's decision to terminate her parental rights should be reversed because the magistrate court erred when it found that Doe neglected her children. Doe also asserts that the magistrate court erred when it found it is in B.P.'s and D.P.'s best interests to terminate Doe's parental rights. Doe does not challenge any of the magistrate court's factual findings, only whether those findings rise to the level of clear and convincing evidence.

**A.      Review of Reasonable Efforts**

Doe contends that the Department did not make reasonable efforts to reunify Doe with her children. She further contends that this Court should examine the reasonable efforts requirement in the termination case as well as the CPA case and that the failure to apply the reasonable efforts requirement to the termination case violates her due process rights. It is well-settled that the Department's efforts at reunification are not relevant to the magistrate court's termination decision under Idaho Code § 16-2005. The Idaho Supreme Court recently reaffirmed this principle in *In re Doe*, 164 Idaho 883, 889, 436 P.3d 1232, 1238 (2019) and rejected an assertion similar to Doe's. *Id.* at 889-90, 436 P.3d at 1238-39. Doe has failed to identify any due process flaw in when or how the Department's reasonable efforts are considered and reviewed in Idaho.

**B.      Termination**

**1.      Statutory basis**

Doe argues there is not clear and convincing evidence of her neglect, but even if there is, she was not substantially capable of complying with the case plan without any assistance from the case manager. Doe contends the case manager provided no meaningful assistance to her and, thus, it was error for the magistrate court to terminate her parental rights on the grounds of neglect. We hold the magistrate court's determination that Doe neglected her child was supported by clear and convincing evidence.

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d

3

341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *In re Doe*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652. Idaho Code § 16-2005 permits a party to petition the court for termination of the parent-child relationship when it is in the child's best interests and any one of the following five factors exist: (a) abandonment; (b) neglect or abuse; (c) lack of a biological relationship between the child and a presumptive parent; (d) the parent is unable to discharge parental responsibilities for a prolonged period that will be injurious to the health, morals, or well-being of the child; or (e) the parent is incarcerated and will remain incarcerated for a substantial period of time. Each statutory ground is an independent basis for termination. *Doe*, 144 Idaho at 842, 172 P.3d at 1117.

Idaho Code § 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act case and the Department has had temporary or legal custody of the child for fifteen of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

The magistrate court found that Doe neglected B.P. and D.P. because she had not complied with the case plan and did not reunify with the children. The court also found that Doe

4

did not exercise proper parental care and control over B.P. and D.P. and the ongoing inability to provide appropriate care constituted neglect under Idaho Code § 16-2002(3). These conclusions are supported by substantial and competent evidence.

The case plan required Doe to: undergo an evaluation for substance abuse and follow the recommendations for treatment; obtain a mental health evaluation and follow all recommendations for treatment; obtain safe, stable, and clean housing for a minimum of 120 days; participate in a protective parenting plan and demonstrate the skills learned in the parenting class; and engage in visits with the children.[1] Doe did not attend the adjudicatory hearing because she "didn't want to be involved," but she reviewed the case plan with the case manager at a meeting in January 2017.

At the time the children were removed from the home, Doe, Father, Child 1, B.P., D.P., and Kenny, an unrelated adult, were living in a camping trailer in the parking lot of the Nampa Downtown Inn where they also rented a room. At that time, Child 1 was charged with a sex offense and was not to be left unsupervised with children more than two years younger than Child 1. Doe was aware of this condition of Child 1's safety plan. On the morning the children were removed, Child 1's juvenile probation officer came by the room to drop off papers with Doe. The probation officer noticed Child 1 was alone with D.P. in violation of the safety plan. The probation officer called Father, who reported he was out of town working and could not come to the motel. The probation officer then attempted to reach Doe, calling her twenty-two times in the next two-and-one-half hours. Doe never returned his calls. During that time, the probation officer remained at the hotel with D.P. and Child 1.

Based on his inability to reach Doe and Father's absence, the probation officer called law enforcement and Child 1 and D.P. were declared in imminent danger. While D.P. was transported away from the motel, Doe telephoned the probation officer and said she was dropping B.P. off at school and had left Kenny to supervise Child 1 and D.P. Doe expressed

---

[1] Neither the petition to terminate parental rights nor the case plan are in the record. Despite recognizing this deficiency, the State made no motion to augment the record with either document, but instead "defers to the trial court's statements, in its Findings of Fact regarding the language of the case plan." Doe also has not moved to augment the record with the case plan. The parties do not challenge the lack of record or the magistrate court's articulation of the terms of the case plan; therefore, this Court will refer to those terms as uncontested terms of the case plan and we will presume the missing records support the findings of the trial court. *Estate of Ekic v. Geico Indemnity Company*, 163 Idaho 895, 897-98, 422 P.32 1101, 1103-04 (2018).

5

surprise both that D.P. was in custody and that Kenny was not with D.P. At the shelter care hearing, Child 1 was removed from the CPA case and B.P. was added to the case.

Despite the case plan requirement that Doe maintain safe housing for 120 days, Doe's housing situation did not improve during the proceedings. During the CPA case, Doe sometimes lived with Father, who reported that he lived in thirteen different places during the pendency of the CPA case, was in custody, or was homeless. Doe failed to maintain independent housing or the same housing for the required period. Doe testified that she receives social security disability income of approximately $735.00 per month, which she believes is sufficient to provide housing and to otherwise support herself and her children. Despite that income, Doe was unable to provide housing consistent with the terms of the case plan. The magistrate court's finding that Doe did not provide safe, stable, and secure housing is supported by clear and convincing evidence.

The magistrate court also found that Doe's substance abuse was pervasive and ongoing during the case, contributing to Doe's neglect of her children. Doe's substance abuse resulted in multiple felony charges and significant periods of incarceration during and after the CPA case. As a result, Doe completed a period of retained jurisdiction, but shortly thereafter, she was again arrested for felony possession of a controlled substance. As of the last day of the termination hearing in July 2019, Doe was either still in or back in detention.

At the termination hearing, Father testified that Doe's substance abuse "messed up" her ability to parent, affected everything, and that Doe was not "capable of being anything to anybody at that time." As part of the case plan, Doe was ordered to obtain a substance abuse evaluation. Moreover, because of her repeated incarceration, Doe was not able to begin, take part in, or complete outpatient treatment. Doe ultimately obtained a GAIN assessment through the Department of Correction and successfully completed substance abuse treatment during her period of retained jurisdiction. However, shortly after completing the rider and being placed on probation, Doe was again arrested for possession of a controlled substance. Based on the evidence presented, the magistrate court's finding that Doe's substance abuse contributed to or caused Doe's neglect of her children is supported by substantial and competent evidence.

The case plan required Doe to obtain a mental health evaluation and follow through with any treatment recommendations. Although Doe obtained a mental health evaluation, she did not follow through with the recommendations. Both Doe and Father admitted that Doe's mental

6

health interfered with her ability to parent her children; consequently, the magistrate court's finding on this circumstance is supported by substantial and competent evidence.

Even when Doe was not incarcerated, she did not engage in behavior that would result in reunification with her children. The magistrate court found that Doe was inconsistent in her visits with her children even when out of custody. Although visits were offered beginning in December 2016, Doe did not attend a visit until January 20, 2017. The visitation schedule was reduced because of Doe's numerous missed or cancelled scheduled visits with the children. Although Doe was affectionate and appropriate during some of the visits she attended, she slept through one visit and didn't participate much in others. Nothing prevented Doe from attending and actively participating in visits with her children when she was not incarcerated, but there were few, if any, visits between Doe and the children in August and September of 2017. Based on Doe's lack of participation in the scheduled visitation, the magistrate court permitted the Department to cease making reasonable efforts at reunification in July 2018. Even after the magistrate court relieved the Department of making reasonable efforts at reunification, the foster parents facilitated visitation. Doe did not participate in those visits.

Although Doe claims compliance with or progress on the case plan was either impossible or the fault of the case manager, the magistrate court found otherwise. Doe does not challenge those factual findings on appeal. The impossibility defense is limited to circumstances beyond the parent's control, not in instances where the parent was responsible, whether directly or indirectly, for case plan non-compliance. *Idaho Dep't of Health & Welfare v. Doe*, 162 Idaho 236, 244-45, 395 P.3d 1269, 1277-78 (2017). Here, Doe alleges that because of her mental health issues, she could not complete the case plan without the assistance of the case manager. She asserts the case manager did not assist her with obtaining permanent housing, did not follow up on her request for help with her mental health issues, did not contact Doe during the two months she was incarcerated at the Adams County jail, made no attempt to visit with or contact Doe during her incarceration in the Canyon County jail, and failed to communicate with Doe regarding the requirements of the case plan or in general. First, these claims are an attempt to litigate the reasonable efforts made by the Department, which we decline to do because this claim was not raised in the magistrate court. Additionally, these claims are belied by the record.

Doe testified she was aware of and understood the terms of the case plan; thus, she cannot now claim she was unaware of the case plan requirements. The magistrate court found

7

the Department made referrals for Doe for a substance abuse assessment and treatment, a mental health evaluation and treatment, and a parenting class. The Department also offered a housing resource manual and visitation opportunities to Doe. Doe did not avail herself of those opportunities and, as she testified, she did not wish to be involved in the CPA case. As to the lack of communication, Doe was in custody for approximately half of the pendency of the CPA case. Doe testified that when she was not in custody, she had numerous phone numbers but often those numbers did not work; she used others' phones; and she allowed Father to be the primary contact between herself and the Department during the CPA case. The lack of Doe's progress or completion of the case plan was not based on circumstances beyond Doe's control. Instead, she was responsible, directly or indirectly, for her failure to comply with the case plan and her inability to communicate with the Department. As a result, we affirm the magistrate court's conclusion that Doe failed to comply with the case plan.

The magistrate court also found that Doe neglected B.P. and D.P. because she had not provided the children with the proper parental care and control, or subsistence, education, medical or other care and control necessary for their well-being. Doe argues that the magistrate court erred in finding that Doe left D.P. and Child 1 unattended by an adult and even if that finding was correct, a single instance cannot establish neglect. The magistrate court's findings are competent "so long as they are supported by substantial, albeit possibly, conflicting, evidence." *Matter of Doe I*, 164 Idaho 883, 888, 436 P.3d 1232, 1237 (2019). The magistrate court was best able to assess the credibility of the witnesses and was free to reject Doe's version of the facts giving rise to D.P. being left with Child 1 unattended by any adult. There is competent evidence in the record to support the magistrate court's conclusion, including the fact that although Kenny was supposed to be obtaining gas from the immediately adjacent gas station, the probation officer never saw Kenny at that gas station nor did Kenny return during the two-and-one-half hours the probation officer was at the motel. Moreover, this was not the only factual support for the magistrate court's finding that Doe did not provide proper parental control.

The magistrate court also cited to the prior removal in Montana and evidence of Doe's lack of protective parenting. The district court noted that the chronic incarceration, the inability to obtain safe and secure housing, and Doe's refusal to follow through with any mental health or substance abuse treatment left B.P. and D.P. in largely the same circumstances that were the

8

impetus for vesting custody with the Department in the first place. The magistrate court's findings are supported by substantial and competent evidence and we affirm the court's finding that Doe neglected her children.

> **2.** **The magistrate court did not err when it found termination is in B.P.'s and D.P.'s best interests**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *In re Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *In re Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *In re Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *In re Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

The magistrate court found that it is in the children's best interests to terminate Doe's parental rights because Doe's life circumstances remained largely unchanged since the children came into custody, despite Doe having nearly three years to alter her behavior and life circumstances and to reunify with B.P. and D.P. Doe's continued use of controlled substances and unmanaged mental health issues led to ongoing legal problems and incarceration. The substance abuse and instability that existed at the onset of the case continued unabated and unremedied through the termination hearing, as evidenced by the repeated criminal charges for possession of a controlled substance. The magistrate court found that B.P. and D.P. had mental health issues that Doe never addressed. Similarly, the children received therapeutic services while in foster care which Doe never established or became involved with. The children improved in foster care academically, emotionally, and behaviorally. The magistrate court found that B.P. and D.P. need long-term services and Doe is not equipped to meet the children's physical, financial, emotional, therapeutic, or medical needs. This finding is supported by substantial and competent evidence.

Doe does not contest that the children had been in custody for fifteen of the preceding twenty-two months from the date of the termination hearing. Notwithstanding that concession,

Doe argues the magistrate court erred when it found that terminating her parental interests is in the best interests of the children because the magistrate court was required to show that it is in the best interests of each child to be separated from its parent. Doe provides no authority for that claim; nonetheless, the magistrate court made several factual findings regarding each child that support the court's conclusion that termination is in the best interests of each child as well as the children, collectively. Doe also points to no authority that requires a court to consider whether it is in the best interests of the child to be separated from his or her siblings, therefore, we decline to address this argument.

Doe also argues the effect of terminating Doe's parental rights leaves the children legal orphans and it cannot be in the children's best interests to terminate Doe's rights when there is not a permanent placement for the children at the time of the termination hearing. Although the children had yet to receive a permanent adoptive placement at the time of the termination trial, that does not mean the children's permanency and stability would be better served by leaving the children in Doe's custody nor is that a ground to set aside the magistrate court's findings in this case. The magistrate court's conclusion that termination is in the best interests of the children is supported by substantial and competent evidence.

## IV.

## CONCLUSION

Doe's failure to challenge the reasonable efforts of the Department to reunify her with her children at some point during the CPA case did not deprive her of due process. The magistrate court's finding that Doe neglected her children is supported by substantial and competent evidence. Doe's failure to comply with or complete the case plan was not due to impossibility, but rather to Doe's repeated incarceration, her failure to obtain and complete mental health and substance abuse treatment, and her failure to obtain and maintain a safe and secure residence for the children. The magistrate court's conclusion that termination of Doe's parental rights to B.P. and D.P. is in the best interests of the children is supported by substantial and competent evidence. The magistrate court's judgment terminating Doe's parental rights is affirmed.

Judge LORELLO and Judge BRAILSFORD **CONCUR**.

10