**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 46440 & 46441**

| | | |
|---|---|---|
| In the Matter of: John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age.<br>------------------------------------------------------- | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br>　　　　　　　Petitioner-Respondent, | ) ) ) ) ) | |
| v. | ) ) | Boise, February 2019 Term |
| JANE DOE,<br>　　　　　　　Respondent-Appellant. | ) ) ) ) ) | Filed: March 12, 2019<br><br>Karel A. Lehrman, Clerk |
| In the Matter of: John Doe I and Jane Doe I, Children Under Eighteen (18) Years of Age.<br>------------------------------------------------------- | ) ) ) | |
| IDAHO DEPARTMENT OF HEALTH AND WELFARE,<br>　　　　　　　Petitioner-Respondent, | ) ) ) ) | |
| v. | ) ) | |
| JOHN DOE,<br>　　　　　　　Respondent-Appellant | ) ) ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Hon. Michael Lojek, Magistrate Judge.

The judgments of the magistrate court are affirmed.

Anthony R. Geddes, Ada County Public Defender, Boise, Joshua M. Wickard, Deputy Public Defender, attorney for Appellant, Mother.

Ellsworth, Kallas & DeFranco, Boise, John C. DeFranco, attorney for Appellant, Father.

Hon. Lawrence G. Wasden, Idaho Attorney General, Boise, attorney for Respondent.

1

BEVAN, Justice

## I. NATURE OF THE CASE

John Doe ("Father") and Jane Doe ("Mother") appeal judgments from the magistrate court terminating their parental rights to two children ("D.E." and "T.E."). The magistrate court terminated Mother and Father's parental rights on the grounds of neglect and found that termination would be in the best interests of the children. Mother challenges the termination of her parental rights to both children, alleging the magistrate court's decision was not supported by substantial and competent evidence and that her due process rights were violated when a microphone malfunctioned on days three and four of the termination hearing, resulting in no audio recording for those days. Father asserts the magistrate court erred in denying him a jury trial and in allowing admission of a police video over his objection. He also alleges that the magistrate court erred in finding that he failed to comply with his case plan and that the magistrate court's decision to cease reasonable efforts and visitation was unreasonable. We affirm the magistrate court's judgments.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On about June 3, 2015, the Idaho Department of Health and Welfare ("IDHW") received a report from a confidential source that there was a potential methamphetamine lab or possible methamphetamine use in Mother and Father's residence. The report included concerns for the safety of a child also residing in the home. The house was described as a "hoarder home."

On June 5, a safety assessor visited the home and expressed concerns for the safety of then two-year-old, D.E., whom Mother and Father agreed should reside with Father's parents while IDHW, Mother, and Father developed a safety plan. In an effort to eliminate the need for shelter care, IDHW scheduled a Family Group Decision Making Meeting for June 9. Neither Mother nor Father appeared for the meeting. At the meeting, D.E.'s maternal grandmother informed the safety assessor that D.E. had been at Mother and Father's home the day before and law enforcement had been called. D.E.'s maternal grandparents also disclosed that a hair follicle from D.E. had been tested recently by a local drug-testing company which revealed very high amounts of methamphetamine in D.E.'s system. The magistrate court noted that the safety assessor suspected, because of the high levels present in D.E.'s system, that D.E. had suffered

2

prolonged exposure to the drug. This belief was premised, in part, on information the safety assessor had received that such high levels could only result from direct ingestion. Mother and Father were given the opportunity to have D.E. tested again and submit to testing themselves, but they declined. IDHW noted that the next time it saw D.E., his head had been shaved.

Based on the hair follicle test and the safety assessor's determination that Mother and Father were undermining efforts to get D.E. the help needed, IDHW entered violations of the safety plan and sought an order to bring D.E. into the legal custody of IDHW. On June 12, 2015, the court signed an order to remove D.E. from the care of both parents. A hearing was conducted on June 16, which resulted in D.E. being placed in the temporary legal custody of IDHW. Once D.E. was brought into care, IDHW considered the paternal grandparents as a possible placement for D.E., but ultimately ruled them out due to concerns that the paternal grandmother had previously not honored the informal safety plan. Instead, D.E. was placed with Mother's parents, who remained the foster parents of D.E. (and later T.E.) through the life of the case.

On August 21, 2015, the magistrate court convened for a disposition and case plan hearing. The court awarded custody of D.E. to IDHW and approved case plans for both Mother and Father. This decision was memorialized in an order filed on September 21, 2015.

Mother's case plan required her to participate in substance abuse treatment, domestic violence support services, and obtain support for her unaddressed mental health issues. Mother conceded that substance abuse and domestic violence were issues that needed to be addressed. Father's case plan required him to seek and complete substance abuse treatment, obtain a domestic violence evaluation and treatment, provide for D.E. financially, and establish stable housing.

On October 9, 2015, the court ordered Mother and Father to submit to urinalysis testing. Father was unable to produce urine and never completed the test, but Mother tested positive for methamphetamine.

While the case was pending, both Mother and Father began work on their case plans. In December 2015, Mother finally reported for in-patient substance abuse treatment. She attended for about one week and then reported that she was pregnant, that her pregnancy was making her tired, and that she was unable to complete the treatment program. In February 2016, Mother gave birth to a second child, T.E. By this time, D.E. had been in custody for about seven months. After T.E.'s birth, Mother submitted to a urinalysis test which was positive for one or more

3

controlled substances. Since Mother and Father had made very little progress on their case plans, IDHW's case worker sought an order to remove T.E. from her parents' care and vest legal custody with IDHW.

After the order to remove T.E. was granted and IDHW was given temporary legal custody, both Mother and Father expressed a greater understanding of the need to complete substance abuse treatment. By March 11, 2016, Mother was enrolled in treatment. Unfortunately, she relapsed, tested positive for methamphetamine, and was asked to leave. She was asked to return some days later, provided she tested clean at the time of re-admittance. In April 2016, Mother admitted she had relapsed again due to boredom.

By spring of 2016, Father's efforts at treatment were noted to have been unproductive. He had attempted various substance abuse treatments with minimal success. For example, in late December 2015, Father discontinued programming at Ascent Behavioral Health and instead checked into Allumbaugh House. Father also signed up for substance abuse treatment, but was not participating or going to groups. Father reported that he continued to use methamphetamine during this treatment attempt. Father then went to another facility and attended for some time. IDHW was unable to obtain records from this second facility since Father refused to sign a release form. Because of his lack of progress, Father was discharged from his treatment. IDHW then requested that Father submit to a urinalysis test, but Father was unable to produce urine and the test was never completed.

A short time later, Father began treatment at Recovery 4 Life because "it would alleviate transportation issues" and he could attend with Mother. After four or five months there, he was discharged from the program due to not attending his classes and providing positive drug tests. In May or June 2016, when the case had been active for about one year, Father checked back into Ascent, this time at a different campus. He was "almost immediately" asked to leave, though his recollection of what exactly happened was vague at the time of the termination hearing. Staff reported, however, that his behavior was particularly concerning and law enforcement was called, resulting in Father being asked to leave the program.

During this time, both Mother's and Father's supervised visits with D.E. and T.E. were transitioned out of the community and into IDHW offices. Mother was seen as affectionate toward her children, but both Mother and Father would arrive for the visits under the influence of drugs. As a result, they behaved in a manner that could harm the children. For example, during

4

one visit, Mother accused Father of putting drugs in her water and expressed concern that D.E. might have ingested some. D.E. was taken to the hospital and tested for exposure, which was traumatic for D.E., though it is unclear whether D.E. tested positive at that time. After this incident, however, the court amended the case plans to require both parents to provide a clean drug test before each visit. From that point, many visits were cancelled because one or both of the parents provided positive urinalysis tests, or they outright refused to submit to the testing at all.

Not only was ongoing drug use a constant struggle for Mother and Father, but in December 2016, violence was reported between Mother and Father, resulting in Mother being criminally charged with domestic battery.

The parents then made some progress. By April 2017, IDHW documented sufficient progress made by both parents to approve 48-hour visits between Mother, Father, and both children, which eventually expanded into an extended home visit. In June 2017, IDHW ended the extended home visit after Mother reported to the case worker that she and Father had been using the drug commonly known as "bath salts."

In November 2017, Garden City Police made contact with Father after threats to D.E. and T.E's foster parents were reported. About a week later, the court ordered that Father's two reported residences be searched for weapons. At the first residence, police located several hundred Ziploc-style bags, a package of MSM (a cutting agent used in the production of methamphetamine), and several unused syringes. At the second residence, a package of "bath salts" was found and a pipe was located in Father's sock.

In December 2017, approximately two and a half years after the case began, IDHW requested that the court change the permanent plan from reunification to termination. It also requested that the court authorize the cessation of visitation between the children and the parents due to several alarming concerns: (1) D.E. was aggressive toward T.E. during the visits; (2) the parents brought toys, food, and other items for D.E., but not for T.E. during the visits; (3) the parents focused on D.E. while leaving T.E. in a corner; (4) the parents failed to bring diapers or wipes to the visits; (5) D.E. was often brought to a visit only to have both parents fail to appear or test positive for controlled substances, prompting negative behavior in D.E. who was old enough to understand what was happening; and (6) the children were having trouble with the visits and suffered a general negative impact as a result. When Mother was questioned about this

behavior, she replied that visits with T.E. were difficult for her, since T.E. had been in foster care since birth and Mother and T.E. had "not bonded."

Further, Mother and Father had been only sporadically employed throughout the two and a half year period, failed to maintain stable and approved housing (sometimes living in a car), and continually tested positive for controlled substances or failed to show up for appointments. One case worker testified at trial that during her time supervising visitation between the parents and the children, D.E. and T.E. missed visits with Mother and Father twelve times because of no-shows or positive urinalysis tests. Neither parent ever completed a plan for relapse prevention. Mother continually struggled with addressing her mental health issues. She testified at the termination hearing, claiming she struggles with anxiety and hears voices. Although she did obtain a prescription for antipsychotic medication, it was given with a recommendation to complete medication management and counseling. Mother reportedly attended only one counseling session in November 2017, one counseling session in December 2017, and three medication management appointments over a sixty-day period.

D.E. has now been with the grandparents since 2015, and T.E. was placed there only two days after birth in February 2016. Thus, the children have remained with their grandparents/foster parents during the life of the case. The placement was pre-adoptive and testimony from the termination hearing establishes that the children are both thriving in their new environment. When D.E. first went into care, he was two and a half years old, but was only able to "grunt." The Guardian Ad Litem testified at the hearing that D.E.'s grunts would become high pitched, suggesting frustration or anger. After being in foster care with the grandparents, D.E. attended speech therapy and has greatly improved. D.E.'s social skills have also improved. Further testimony from the hearing revealed that when D.E. visits with Mother and Father, he regresses back to grunting to communicate.

D.E. is now a kindergartener and although he is still shy, he has average kindergarten abilities and can participate in class. T.E. is reported as doing well. At the hearing, the grandmother testified that the children and their pre-adoptive grandparents are extremely bonded.

The hearing to terminate parental rights was held at the end of August 2018. On October 5, 2018, the magistrate court issued a 118-page decision detailing the evidence entered at the hearing. The court found that all counts against the parents were proven by clear and convincing

evidence and termination was in the best interests of the children. Both parents appealed separately, but we issue this joint opinion as the cases overlap considerably.

### III. STANDARD OF REVIEW

This Court has set forth the relevant standard of review in *Idaho Department of Health & Welfare v. Doe*:

> Grounds for termination of parental rights must be shown by clear and convincing evidence because each parent has a fundamental liberty interest in maintaining a relationship with his or her child. Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. On appeal, this Court will not disturb the magistrate court's decision to terminate parental rights if there is substantial, competent evidence in the record to support the decision. Substantial, competent evidence is such evidence as a reasonable mind might accept as adequate to support a conclusion. This Court is required to conduct an independent review of the magistrate court record, but must draw all reasonable inferences in favor of the magistrate court's judgment because the magistrate court has the opportunity to observe witnesses' demeanor, to assess their credibility, to detect prejudice or motive and to judge the character of the parties.

150 Idaho 36, 41, 244 P.3d 180, 185 (2010) (internal quotations and citations omitted).

### IV. ANALYSIS

**A.     The magistrate court had substantial and competent evidence to terminate Mother's parental rights to D.E. and T.E.**

> *1. Mother's due process rights were not violated when there were issues with the microphones during hearing days three and four.*

Mother argues that her due process rights were violated when a full recording was not made of the termination hearing. She alleges that on days three and four of the four-day hearing, only one microphone was functioning and as a result, the court reporter was unable to transcribe the hearing clearly. Mother estimates 692 times when the court reporter designated that testimony or questioning was inaudible.

Mother alleges that this amounts to a due process violation, relying heavily on *Ebersole v. State*. 91 Idaho 630, 428 P.2d 947 (1967). In *Ebersole*, a criminal defendant challenged whether he had waived his right to counsel at his arraignment. *Id.* at 632, 428 P.2d at 949. This Court held that because there were no minutes of the clerk of the court, and there was no transcript by a court reporter for the arraignment proceedings at which the defendant pleaded guilty, there was a lack of fundamental fairness and deviation from established rules of

procedure, amounting to a violation of the defendant's due process rights. *Id.* at 636, 428 P.2d at 953.

This case is distinguishable from *Ebersole*. There, the Court's decision focused on the lack of a transcript *and* minutes chronicling the arraignment proceedings in a criminal case. Dissimilarly here, although the microphone malfunctioned, resulting in poor or no audio recording of some of the termination hearing, a more than sufficient transcript of the hearing was created. The record includes 1225 pages of transcript. Despite some "inaudible" words, both the context and meaning of all testimony were preserved within the transcript of the hearing.

Under Idaho Code section 16-2009, a hearing for termination of a parent-child relationship requires "[s]tenographic notes *or* mechanical recording of the hearing." I.C. § 16-2009 (emphasis added). Since an official transcript was created by a court reporter, we hold that this requirement was achieved here. Mother's due process rights were not violated because of the recording malfunction.

2. *The magistrate court's finding that termination was in the best interest of D.E. and T.E. was supported by substantial and competent evidence.*

Mother asserts that the magistrate court abused its discretion by failing to apply the correct legal standards in favor of reunification and by ignoring relevant evidence. Specifically, Mother alleges a lack of evidence presented to the court that the children were suffering from being in foster care and needed permanency. Mother claims it is incorrect that the children needed "an end to trauma, upheaval, uncertainty or instability in their lives as they [had] been in the stable care of their grandparents." Finally, Mother asserts that the magistrate court ignored and downplayed her progress on her case plan. As evidence, she cites her completion of a level 1.0 outpatient drug treatment, her "permanent" position at Albertsons, and the testimony at the hearing showing that there was a bond between Mother and her children. Mother believes that the magistrate court mistakenly thought the only options available were terminating parental rights or returning the children to the parents that day.

Under Idaho Code section 16-2005(1), a court may terminate parental rights where it finds that termination is in the best interests of the child and one of five specific grounds for termination exists. The conditions that allow for termination include (1) abandonment; (2) neglect or abuse; (3) lack of a biological relationship between the child and the presumptive parent; (4) the parent cannot discharge parental responsibilities for a prolonged indeterminate

period, which will be injurious to the health, morals or well-being of the child; or (5) the parent is incarcerated and will remain incarcerated for a substantial time. I.C. § 16-2005(1). The statutory conditions listed in section 16-2005 are "independent and if any one or more of the grounds for termination are found, termination may be granted." *Matter of Aragon*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991).

"Neglect" is defined as the parent's failure

to comply with the court's orders or the case plan in a child protective act case and: (i) The department has had temporary or legal custody of the child for fifteen (15) of the most recent twenty-two (22) months; and (ii) Reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department.

I.C. § 16-2002(3)(b).

Here, Mother's parental rights were terminated for: (1) failing to comply with the court's orders or case plan while IDHW had temporary or legal custody for fifteen of the most recent twenty-two months; (2) failing to provide proper parental care and control due to not properly addressing her substance abuse issues, including her inability to maintain sobriety and provide a drug-free living environment for the children; (3) failing to provide proper parental care and control because of a failure to benefit from domestic violence treatment and counseling and failure to address issues involving physical, emotional, and/or verbal abuse which impaired her ability to provide a home free from any acts of violence; (4) lack of proper parental care and control due to failure to treat mental health and/or emotional issues; and (5) failing to provide proper parental care and control due to a lack of appropriate parenting skills, and inability to demonstrate the ability to meet the children's needs.

The magistrate court had substantial and competent evidence to terminate Mother's parental rights on each of these grounds. Contrary to Mother's assertion, the court did acknowledge that Mother had made some efforts to improve her situation during this case, stating that in the latter part of 2016 and early 2017, "[Mother and Father] both began to consistently test negative for controlled substances. . . . At that time [ ] visits had gone well, both parents were employed, they appeared to have stable housing, they attended some visits, and they were inquiring about their children and their appointments." The court goes on to note that after these positive changes, the case plan was changed back to reunification; however, shortly

9

thereafter Mother revealed that she had relapsed and was again using drugs with Father. After this, Mother did not complete any more treatment and improvement ceased.

Mother's argument is unpersuasive based on this Court's decision in *Idaho Department of Health and Welfare v. Doe*. 162 Idaho 236, 395 P.3d 1269 (2017). In that case, a mother argued that termination was inappropriate because of her significant participation in her case plan, even though her mental health issues affected her ability to participate. *Id.* at 243, 395 P.3d at 1276. This Court found the mother's argument to be unpersuasive, reasoning

> [t]he record, trial testimony, and trial exhibits demonstrate that, although Doe made occasional slight improvements, overall she demonstrated an inability to discharge parental responsibilities by failing to make progress with her visitation behavior, employment state, substance abuse, or mental health evaluations.

*Id.* at 245, 395 P.3d at 1278.

Similarly here, even had Mother participated meaningfully in her case plan, she failed to complete the plan under Idaho Code section 16-2002(3)(b). After days of testimony, the magistrate court found that, despite the brief period of improvement, Mother relapsed, did not attend relapse prevention, did not attend counseling appointments to deal with her mental health issues, and did not seek domestic violence treatment with Father. By the time the magistrate court issued its opinion, IDHW had had temporary or legal custody of both D.E. and T.E. for about twice the duration contemplated by Idaho Code section 16-2002(3)(b) and reunification had not been accomplished.

Despite testimony regarding Mother's improvements in 2016 and 2017, the evidence supports the magistrate's conclusion that Mother had shown an inability to parent because of her mental and substance abuse issues. The magistrate court considered and addressed all relevant testimony, including Mother's improvement. We thus hold that the magistrate court had substantial and competent evidence that Mother neglected D.E. and T.E. and was unlikely to "make the permanent changes necessary to properly care for her children."

As discussed in the 118-page opinion, extensive evidence was presented showing that termination was in both D.E. and T.E.'s best interests. Every factor mentioned above supports the magistrate court's conclusion. First, both parents failed to provide a stable, permanent home for the children and they struggled with both sobriety and in maintaining consistent, gainful employment. The children have since found a safe and stable home in foster care with their grandparents. Second, the children's contact with Mother and Father was "inconsistent,

10

traumatic, and [by the termination hearing had] receded into the past." No appropriate bond existed between either parent and the children. Third, the children's foster parents reported that since going into foster care the children have made significant improvements. D.E.'s speech has improved, as have D.E.'s social skills. T.E. is also progressing well. Fourth, over the two and a half year period that this case was active, Mother made little effort to improve the situation, with significant progress being made only for a short time. Nothing in the record indicates that Mother would be able to provide stability and certainty for the children. Rather, the magistrate court held that "[c]ontinuing [Mother's] relationships with her children would likely result in recurring neglect of those children because she simply cannot provide proper parental care and control of them."

We therefore conclude that substantial and competent evidence supports the magistrate court's conclusion that termination of Mother's parental rights was in the best interests of the children. As a result, we affirm the magistrate court's judgment of termination.

**B.      The magistrate court had substantial and competent evidence to terminate Father's parental rights to D.E. and T.E.**

*1.   The magistrate court did not err in denying Father's request for a jury trial.*

Father argues that Idaho's statutory scheme that dictates a court decide the termination of parental rights in unconstitutional. He argues that due to the serious and permanent nature of the outcome, a jury should be the fact-finder. Father initially filed and argued a notice of objection on this basis, which was denied by the magistrate court. The court noted that Idaho law mandates that hearings for termination of parental rights will be heard by a court without a jury and that the statute is constitutional. Father claims this ruling was erroneous and this case must be remanded for a jury trial.

Father failed to provide argument and authority for this issue; thus, it cannot be considered by this Court. *Bach v. Bagley*, 148 Idaho 784, 790, 229 P.3d 1146, 1152 (2010) ("Regardless of whether an issue is explicitly set forth in the party's brief as one of the issues on appeal, if the issue is only mentioned in passing and not supported by any cogent argument or authority, it cannot be considered by this Court."); *In re Doe*, 156 Idaho 103, 109, 320 P.3d 1262, 1268 (2014) ("Even in an appeal from the termination of parental rights, [the Court] will not consider an issue which was not supported by cogent argument and authority."). We therefore decline to consider Father's request to remand this case for a jury trial.

11

*2. The magistrate court's finding that Father failed to comply with the case plan was supported by substantial and competent evidence.*

Father has only challenged the magistrate court's findings regarding his lack of compliance with the case plan. As a result, even if Father were successful in his challenge regarding the case plan findings, several independent grounds are included in the magistrate court's findings which, pursuant to Idaho Code section 16-2005(1), remain uncontested. Under section 16-2005(1), a court may grant an order terminating parental rights if it finds that such termination is in the child's best interests and that one of the statutory conditions for termination exists. The magistrate court found that Father had neglected the children not only by (1) failing to comply with the court's orders or case plan while IDHW had temporary or legal custody for fifteen of the prior twenty-two months, but also by (2) failing to provide proper parental care and control due to not properly addressing his substance abuse issues, including his inability to maintain sobriety and provide a drug-free living environment for the children; (3) failing to provide proper parental care and control because of a failure to complete domestic violence treatment and counseling and failure to address issues involving physical, emotional, and/or verbal abuse which impaired his ability to provide a home free from any acts of violence; (4) lack of proper parental care and control due to failure to treat mental health issues; and (5) failing to provide proper parental care and control due to a lack of appropriate parenting skills, and inability to demonstrate the ability to meet the children's needs. As noted above, "neglect" is defined in part as "[t]he parent(s) [have] failed to comply with the court's orders or the case plan in a child protective act case and…[r]eunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the department." I.C. § 16-2002(3)(b).

Addressing Father's argument about the case plan first, the case plan set forth specific areas of concern, the desired result for each of those concerns, and tasks that Father was to accomplish to achieve the desired results. The magistrate court found that Father had failed to complete the tasks and Father contends that this finding, with regard to his progress on the case plan specifically, was not supported by substantial and competent evidence. Even so, the record belies his claims and we conclude that the magistrate court's findings regarding the case plan is supported by substantial evidence.

With that said, this Court has held that the statutory grounds for termination under Idaho Code section 16-2005 are independent and if any one or more of the grounds for termination are found, termination may be granted. *Matter of Aragon*, 120 Idaho at 611, 818 P.2d at 315. Similarly, where the judgment of the lower court is based on several alternative grounds, the fact that one of the grounds may have been in error is of no consequence and may be disregarded if the judgment could be sustained upon one of the other grounds. *Idaho Dep't. of Health & Welfare v. Doe*, 161 Idaho 660, 666, 389 P.3d 946, 952 (2016). Thus, even if we were to agree that Father's challenges about the case plan were meritorious, the magistrate court's conclusion to terminate Father's rights remain, as the statutory grounds for termination are independent and Father put forth no arguments challenging the magistrate court's independent findings on these other grounds. *Doe v. State Dep't. of Health & Welfare*, 123 Idaho 502, 503–504, 849 P.2d 963, 964–65 (Ct. App. 1993).

The magistrate court reached its decision to terminate parental rights on several grounds, each citing different reasons for a finding of neglect. The court's findings were also coupled with a reasonable basis for the court having "virtually no confidence that [Father] will permanently change his ways for the better." As the court reasoned:

> The result of [Father's] choices and seemingly unstoppable negative and anti-social behavior is a failure to demonstrate sobriety and/or stability and/or the ability to provide for his children's needs *as well as* a failure to comply with the Court's orders and case plans. [Father's] choices and behavior indicate that he is unable *to discharge his responsibilities to and for his children and, as a result of his inability, his children lack the parental care necessary for their health, safety, or well-being* as they have remained in foster care for approximately thirty-eight and thirty-one months, respectively, during which their lives and continued development have been jeopardized by a lack of stability and certainty.

(Emphasis added.)

In this case, Father does not challenge the magistrate court's findings of fact, or even the conclusion that he neglected his children. Nor does he dispute that D.E. and T.E. have been in the custody of IDHW for the required period or that reunification has not been accomplished. He does not dispute the court's finding that Father's condition will last for an indeterminately prolonged time period or that his inability to provide the parental care necessary for the children's health, safety, and well-being jeopardized their lives and continued development. As a result, the magistrate court's conclusion to terminate Father's parental rights is unassailable on appeal.

13

Beyond citing several separate, individually compelling reasons for its finding of neglect other than failure to comply with the case plan, the magistrate court found that the children lacked the care from Father "necessary for their health, safety, and well-being." *See* I.C. § 16-2005(1)(d). This finding alone is supported by substantial evidence and shows that the magistrate court's decision was based on alternative grounds in addition to Father's efforts directed toward the case plan. Thus, Father's arguments on the case plan are not determinative of the magistrate court's overall conclusion, which we construe in favor of the judgment that Father neglected his children. The magistrate court's thorough and reasoned opinion is supported by substantial and competent evidence that Father neglected the children.

As discussed above with respect to Mother, extensive evidence was presented showing that termination was also in the children's best interests. The court found that "[e]ven if [D.E.] and [T.E.] are once again returned to [Father] and/or [Mother], there is an overwhelmingly high likelihood that they would then need to be taken back into shelter care and/or foster care *again*." (Emphasis in original.) The magistrate court provided several reasons to support this finding. As noted, first, both parents failed to provide a stable, permanent home for the children and they struggled with both sobriety and in maintaining consistent, gainful employment. The children have since found a safe and stable home in foster care with their grandparents. Second, the children's contact with Mother and Father was never consistent or predictable. Several meetings were cancelled at the last minute when either or both parents failed to show-up or could not pass a drug test. Third, the children's foster parents reported that since going into foster care the children have made significant improvements. D.E.'s speech improved, as did his social skills. T.E. is also progressing well. Fourth, over the two and a half year period that this case was active, Father made little effort to improve the situation. Although Father expressed a desire to live a sober, employed, and stable life, the court found his goals to be tenuous and speculative. Father's track record supports the finding that if given an opportunity, he would again interrupt contact with his children which would "result in recurring neglect of those children."

We thus conclude that substantial and competent evidence supports the magistrate court's conclusion that termination of Father's parental rights was in the children's best interests. As a result, we affirm the magistrate court's judgment of termination.

3. *The magistrate court did not abuse its discretion in allowing the admission of a police video over Father's objection.*

14

Father asserts that the magistrate court abused its discretion by allowing admission at the termination hearing of a police video depicting an interaction between Father and law enforcement. The video showed law enforcement's discovery of "bath salts" and other drug paraphernalia on Father's person and in his residence during a search for weapons. Father objected to its admission at the hearing and the magistrate court overruled the objection after determining the video was relevant about Father's lack of progress in substance abuse treatment. Father claims that because the drug charges were subsequently dismissed, the video was overly prejudicial and its admission was an abuse of the court's discretion.

The Idaho Rules of Evidence apply at a parental termination hearing. I.J.R. 51(c) ("Where a petition to terminate parental rights has been filed in a C.P.A. case, the Idaho Rules of Evidence shall apply to proceedings on the petition to terminate."); *Cooke v. State*, 149 Idaho 233, 239, 233 P.3d 164, 170 (Ct. App. 2010). Thus, a lower court's determination of whether the probative value of evidence admitted at a hearing outweighs its prejudicial effect is reviewed for an abuse of discretion. The test for an abuse of discretion is

> whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason.

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018). "The party asserting the abuse of discretion carries the burden of demonstrating that an abuse of discretion occurred, and a failure to do so is fatal to its argument." *Nielson v. Talbot*, 163 Idaho 480, 489, 415 P.3d 348, 357 (2018) (citing *Green River Ranches, LLC v. Silva Land Co., LLC*, 162 Idaho 385, 397 P.3d 1144, 1151 (2017)).

Father has failed to demonstrate, or even attempt to demonstrate, that an abuse of discretion occurred under any part of the four-part standard applied by this Court. "Failing to demonstrate that an abuse of discretion occurred under any part of the test applied by this Court . . . . is fatal to [an] argument that the court abused its discretion." *Valiant Idaho, LLC v. VP Inc.*, 164 Idaho 314, 332, 429 P.3d 855, 873 (2018) (internal quotation and citation omitted). It is Father's burden to demonstrate that an abuse of discretion occurred, and his failure to do so is fatal to his argument. Thus, we affirm the magistrate court's discretionary decision.

4. *The magistrate court's decision to not reinstate reasonable efforts and allow visitation was supported by substantial and competent evidence.*

15

On April 18, 2018, a little over two and a half years after commencement of IDHW's involvement, Father filed a motion to resume reasonable efforts to reunify children, seeking opportunities to resume visits with the children. On May 8, 2018, the magistrate court conducted a hearing on the motion which Mother, through counsel, joined. Ultimately, the magistrate court denied the request concluding that it was a "discretionary issue for the court" and that "reinstating visitation would not be in the best interests of the children." Father argues that this decision was unreasonable and that the suspension of reasonable efforts and visitation made it impossible for him to "get it together," which he could have done in "[a] few short months."

A finding that reunification is no longer viable and that further visitation is not in the best interests of the children supports the magistrate court's ultimate decision to terminate Father's rights. *See In re Doe*, 143 Idaho 343, 348, 144 P.3d 597, 602 (2006). In the court's memorandum decision terminating rights, it discussed that between January 5, 2018, and Father's request to reinstate visitation in April 2018, Father had little to no contact with the children and both D.E. and T.E. were thriving in their placement with grandparents. The court noted D.E.'s improved speech and progress in kindergarten, and T.E.'s developmental progress and significant dissipation of aggression. The court determined at the termination hearing:

> It is not in the children's best interest to wait while [Father] and/or [Mother] continue to struggle to resolve their ongoing issues and otherwise remove the currently-existing barriers to reunification. [D.E.] and [T.E.] need stability and certainty in their lives, neither of which their parents can or will provide.

We agree. Moreover, Father's "few short months" argument fails to address his behavior over the preceding thirty-four months[1]. The findings of the magistrate court are sufficient to sustain its bases for ceasing reasonable efforts and visitation.

## V. CONCLUSION

Based on the foregoing analysis, we affirm the magistrate court's judgments terminating Mother's and Father's parental rights.

Chief Justice BURDICK, Justices BRODY, STEGNER and MOELLER, CONCUR.

---

[1] The original "order to remove the child" (referring to D.E.) was filed on June 16, 2015. As noted, Father filed his "motion to resume reasonable efforts to reunify children" and resume visits on April 18, 2018.