**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48756**

| | | |
|---|---|---|
| In the Interest of: | ) | |
| Jane Doe I, John Doe I, and John | ) | |
| Doe II, Children Under Eighteen (18) | ) | |
| Years of Age. | ) | |
| STATE OF IDAHO, DEPARTMENT OF | ) | |
| HEALTH AND WELFARE, | ) | **Filed:  September 20, 2021** |
| | ) | |
| Petitioner-Respondent, | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| v. | ) | **THIS IS AN UNPUBLISHED** |
| | ) | **OPINION AND SHALL NOT** |
| JANE DOE (2021-17), | ) | **BE CITED AS AUTHORITY** |
| | ) | |
| Respondent-Appellant. | ) | |
| | ) | |

Appeal from the Magistrate Division of the District Court of the Fourth Judicial District, State of Idaho, Ada County.  Hon. Andrew Ellis, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Anthony R. Geddes, Ada County Public Defender; Joshua D. Mills, Deputy Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; John R. Shackelford, Deputy Attorney General, Boise, for respondent.

---

BRAILSFORD, Judge

Jane Doe ("Mother") appeals the magistrate court's judgment terminating her parental rights to her three minor children.  Mother argues her due process rights were violated because a court reporter did not transcribe the second day of the termination trial.  Further, she argues the court erred by concluding the termination of her parental rights is in the children's best interests.  Because Mother failed to demonstrate a due process violation and because substantial and competent evidence supports the court's conclusion that the termination of Mother's parental rights is in the children's best interests, we affirm.

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Mother is the biological parent of three minor children: M.S. (born October 2012), I.A. (born November 2015), and R.O. (born September 2017).[1] On February 9, 2019, law enforcement received a domestic violence call and responded to Mother's residence. The responding officers found Mother and her father in a physical confrontation at the residence's front door. Mother smelled of alcohol and appeared intoxicated. Inside the residence, the officers found several empty alcohol containers; I.A. wearing a soiled and "saggy" diaper; and M.S. with a blood-soaked shirt wrapped around her head and a large laceration on her forehead. M.S. told the officers Mother threw a ceramic figurine at M.S., causing the laceration. Paramedics evaluated M.S.'s laceration and also R.O., who appeared to have difficulty breathing when the officers woke him.

The officers arrested Mother on an outstanding warrant and declared the children in imminent danger. The Idaho Department of Health and Welfare received custody of the children and placed them in foster care. Also as a result of Mother's conduct on February 9, 2019, the State charged Mother with felony injury to child. Eventually, she pled guilty to misdemeanor battery and false imprisonment and was placed on supervised probation.

In April 2019, the magistrate court developed a case plan for Mother to follow to reunify with the children. Among other things, this plan required Mother to complete substance abuse screening; to follow all treatment recommendations and comply with random drug and alcohol testing; to maintain regular contact with the children; to complete a mental health assessment and follow all recommendations for treatment; and to participate in nurturing parent classes. At a permanency hearing in June 2020, the court found that the children had been in foster care for sixteen months and that Mother had failed to engage in substance abuse treatment and mental health treatment. Due to Mother's lack of progress on her case plan, the court approved the permanency goal of termination of Mother's parental rights. The court, however, did not suspend reasonable efforts of reunification at that time but did schedule a termination trial for October 2020.

---

[1] Mother has at least one additional, younger minor child who is not the subject of this appeal.

After the magistrate court scheduled the termination trial but before it occurred, Mother had at least two serious incidents as a result of her consumption of alcohol. In September 2020, Mother was arrested for driving under the influence (DUI). At that time, her blood alcohol concentration (BAC) was .279. Then, on October 10, 2020, Mother was discovered unconscious in a parking garage, was admitted to the hospital for alcohol poisoning, and had a BAC of .543.

The magistrate court held a two-day trial on the Department's petition to terminate Mother's parental rights on October 20, 2020, and February 17, 2021. The length of time between the first day and the second day of the trial was due, at least in part, to the availability of interpreters for Mother. Although the first day of the trial was transcribed by a court reporter, no transcription exists of the second day of the trial. Lengthy, detailed court minutes, however, exist for the second day of trial.

On April 13, 2021, the magistrate court issued a decision terminating Mother's parental rights to the children.[2] The court found clear and convincing evidence that Mother neglected the children under Idaho Code § 16-2002(3)(a) (relying on definition of neglect in I.C. § 16-1602(31)), and by failing to comply with the case plan, I.C. § 16-2002(3)(b), and that termination of Mother's parental rights is in the children's best interests. Mother timely appeals.

## II.

### STANDARD OF REVIEW

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id.* Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a

---

[2] The magistrate court also terminated the parental rights of I.A.'s and R.O.'s biological father and entered an order of non-establishment of parental rights related to M.S.'s putative father.

3

court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the magistrate court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

### A.     Mother Did Not Establish a Violation of Her Due Process Rights

Mother asserts her due process rights were violated "when the [magistrate] court failed to create an adequate record of the proceedings as required by statute and case law." She contends that "the missing record is essential to the elements of the case" and that she "is unable to refer to the record to challenge the findings by the court." In support, Mother relies on *Ebersole v. State*, 91 Idaho 630, 428 P.2d 947 (1967).

In that case, Ebersole filed a habeas corpus petition challenging his judgment of conviction. *Id.* at 631, 428 P.2d at 948. That conviction recited that, on the day of his arraignment, Ebersole waived his right to counsel, entered a guilty plea, and was adjudged guilty. *Id.* The evidence at the habeas corpus hearing showed that, at the arraignment, Ebersole was not represented by counsel and that no court reporter or clerk of the court was present. *Id.* As a result, there was neither a transcript by a court reporter nor minutes of the clerk of the court of

4

the proceeding. *Id.* at 634, 428 P.2d at 951. The judge in the underlying case, however, testified, "I told [Ebersole] that if he wanted an attorney he could have one," but that "Ebersole said he did not want an attorney [and] was ready to make his plea." *Id.* at 633, 428 P.2d at 950. The habeas corpus court denied Ebersole's petition, ruling that Ebersole "was advised of his rights-- including his right to court appointed counsel" and "wanted to enter a plea and did enter his plea of guilty." *Id.* at 631, 428 P.2d at 948.

The Idaho Supreme Court, however, reversed this ruling. *Id.* at 636, 428 P.2d at 953. It concluded that "from the record it does not appear that [Ebersole] was ever asked if he comprehended what was taking place in the court." *Id.* at 633, 428 P.2d at 950. Further, it concluded the trial court "failed to follow mandatory statutory requirements in conducting [Ebersole's] arraignment." *Id.* Specifically, the Court noted statutes requiring that a court reporter report all oral proceedings and that the clerk of the court take down testimony in the absence of a "shorthand reporter." *Id.* at 634, 428 P.2d at 951. The Court concluded that Ebersole's due process rights were violated by "a breakdown in the application of established procedures [necessitating] resort to parol evidence of court officials and of [Ebersole] himself to establish what took place." *Id.* at 636, 428 P.2d at 953.

The Idaho Supreme Court, however, distinguished *Ebersole* in *Idaho Dep't of Health & Welfare v. Doe*, 165 Idaho 33, 437 P.3d 33 (2019). In *Doe*, the magistrate court terminated mother's parental rights. *Id.* at 36, 437 P.3d at 36. On appeal, mother argued "her due process rights were violated when a microphone malfunctioned on days three and four of the termination hearing." *Id.* As a result, mother asserted "the court reporter was unable to transcribe the hearing clearly" and estimated "692 times when the court reporter designated that testimony or questioning was inaudible." *Id.* at 39, 437 P.3d at 39. In support of her assertion that this incomplete record violated her due process rights, mother relied on *Ebersole*. *Doe*, 165 Idaho at 39, 437 P.3d at 39. The Idaho Supreme Court, however, distinguished *Ebersole*:

> There, the Court's decision focused on the lack of a transcript *and* minutes chronicling the arraignment proceedings in a criminal case. Dissimilarly here, although the microphone malfunctioned, resulting in poor or no audio recording of some of the termination hearing, a more than sufficient transcript of the hearing was created. The record includes 1225 pages of transcript. Despite some "inaudible" words, both the context and meaning of all testimony were preserved within the transcript of the hearing.

5

*Doe*, 165 Idaho at 39, 437 P.3d at 39. As a result, the Court held mother's due process rights were not violated. *Id.*

We conclude that a sufficient record was created in this case and that both the context and meaning of all of the testimony were preserved. At the termination trial, fourteen witnesses testified--seven on each day of trial. On the first day of trial, the court heard testimony from two police officers who arrested Mother on February 9, 2019; one officer who arrested Mother for DUI in September 2020; the children's foster father; a licensed counselor who specializes in refugee assimilation into society and who treated Mother; and a Department employee who supervised Mother's visitation with the children. A certified court reporter transcribed all of this testimony, which included 124 pages. According to this transcript, the first day of trial related only to Mother and did not address the parental rights of I.A.'s and R.O.'s biological father whose rights the Department also sought to terminate, and the magistrate court anticipated the second day of trial would address both Mother's and father's parental rights.

During the second day of trial, the magistrate court initially addressed Mother's motion to amend the permanency plan, including hearing testimony related to that motion. The court denied that motion. Thereafter, the court heard the testimony regarding the termination of Mother's parental rights, including the testimony of an employee of the Idaho State Police Laboratory; a hospital social worker who encountered Mother during her October 2020 hospitalization; a therapist who treated Mother for mental disorders; the children's guardian ad litem; and a Department social worker. Although not transcribed by a court reporter, the record contains 42 pages of court minutes with over 700 entries recording the court's proceedings on the second day of trial down to the second and providing a detailed narrative inclusive of the court's comments; of counsel's arguments, questions, and objections; and of each witness's testimony. Additionally, the appellate record contains numerous exhibits admitted in evidence including the case plan for Mother; documentation of Mother's BAC of .279 when she was arrested for DUI; documents related to Mother's hospitalization for alcohol poisoning, including those showing her BAC of .543; and the results of Mother's urinalyses.

For numerous reasons, we conclude this record does not violate Mother's due process rights. The magistrate court's findings related to the second day of trial closely track the testimony as recorded in the minutes. Although Mother contends she "is not able to refer to the record to challenge the findings by the court," the significant detail of the minutes would allow

Mother to identify those portions of the minutes which are purportedly inconsistent with the court's findings. Mother, however, has failed to identify any factual finding she contests as unsupported. Mother has also made no effort to identify any factual information which she contends should have been but is not included in the minutes or which is purportedly inaccurately recorded in the minutes. Finally, the detail in the minutes and the other portions of the appellate record are more than sufficient for this Court to determine that substantial and competent evidence supports the magistrate court's conclusions that Mother neglected the children and, as discussed below, that the termination of Mother's parental rights is in the children's best interests.

Moreover, Idaho Rule of Civil Procedure 61 provides that "at every stage of the proceeding, the court must disregard all errors or defects that do not affect any party's substantial rights." Accordingly, a party must provide an argument explaining how an alleged error or defect prejudiced her substantial rights. *Cedillo v. Farmers Ins. Co.*, 163 Idaho 131, 136, 408 P.3d 886, 891 (2017) (declining to address appellant's discovery issues on appeal because appellant failed to support claims with argument demonstrating prejudice). Mother, however, does not demonstrate how the lack of a transcript from the second day of the trial prejudices her. Because there are detailed minutes of that day and because Mother has not shown prejudice, she fails to demonstrate a violation of her due process rights.

## B. Best Interests of the Children

Mother does not challenge the magistrate court's conclusion that she neglected the children. Rather, she only challenges the court's conclusion that the termination of her parental rights is in the children's best interests. Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270

7

(2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Substantial and competent evidence supports the magistrate court's conclusion that the termination of Mother's parental rights is in the children's best interests. Since the children have been in the Department's care, Mother has failed to improve her situation. For example, Mother has failed to engage in mental health or substance abuse counseling in a productive manner. More than once, Mother was discharged from mental health and substance abuse services because she failed to regularly attend treatment sessions. Despite her ongoing issues with alcohol abuse, Mother was not engaged in substance abuse treatment between March and September 2020, and she was not engaged in mental health treatment at the time of the termination hearing.

The record shows Mother has refused to acknowledge her substance abuse issues and continues to abuse alcohol. At the termination hearing, Mother denied using alcohol on the night the children were taken into custody; she denied being charged with DUI in September 2020; and she denied being hospitalized for alcohol poisoning in October 2020. The magistrate court, however, found Mother's testimony not credible. Indeed, the record shows that Mother was arrested for DUI in September 2020 with a BAC of .279 and that she was hospitalized for alcohol poisoning on October 10, 2020--ten days before the termination hearing--with a BAC of .543. As the Department social worker noted, Mother's continued alcohol abuse makes it difficult for her to address her mental health and parenting issues.

The stability and permanency of Mother's housing remains questionable also. Although Mother has had the same housing throughout the case's pendency, she lives with and is financially dependent on her significant other who is unrelated to the children and who, like Mother, denies Mother's alcohol abuse. Further, Mother has reported domestic violence issues with her significant other to the Department social worker, prompting concerns about physical abuse. Meanwhile, the children's well-being has significantly improved while in foster care, and they require stability that Mother has not shown she can provide. Accordingly, substantial and competent evidence supports the magistrate court's conclusion that the termination of Mother's parental rights is in the children's best interests.

Finally, we reject Mother's arguments that the magistrate court abused its discretion by "failing to follow the legal standard" requiring a presumption of reunification, by failing "to take [Mother's] progress into account," and by "viewing the only option" as terminating Mother's rights or returning the children "to the parents that day." In support of these arguments, Mother relies on *Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 752, 250 P.3d 803 (Ct. App. 2011).

In *Doe*, this Court reversed the magistrate court's termination of father's parental rights. In doing so, the Court faulted the magistrate court for disregarding evidence of father's improvement during the case's pendency:

> The court's decision placed excessive emphasis upon Father's admittedly abhorrent behavior prior to the removal of the children from his home and upon minor noncompliance with reporting requirements that had not been in effect for half a year prior to the termination hearing, while disregarding or giving minimal attention to the compelling evidence of Father's success in overcoming alcoholism, complying with treatment requirements, maintaining remunerative employment, and becoming a nurturing parent with whom the children had developed a strong bond. The evidentiary record does not provide objectively supportable grounds for the trial court's decision that termination of Father's parental rights was in the best interests of the children and Father at the time of the termination hearing.

*Id.* at 763, 250 P.3d at 814.

Unlike *Doe*, the evidence in this case does not support Mother's implicit assertion that she made satisfactory progress towards reunification with the children. To the contrary, substantial and competent evidence shows Mother failed to complete mental health and substance abuse treatment, continues to abuse alcohol, and is unable to parent the children and meet their basic needs. As the magistrate court concluded, the termination of parental rights is necessary to provide the children with the stability, consistency, and permanency they deserve.

## IV.

## CONCLUSION

Mother has failed to demonstrate a violation of her due process rights. Further, substantial and competent evidence supports the magistrate court's conclusion that the termination of Mother's parental rights in in the children's best interests. Accordingly, we affirm the judgment terminating Mother's parental rights.

Judge GRATTON and Judge LORELLO **CONCUR**.

9